UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL ASHITEY,<br><br>           Plaintiff,<br>    v.<br><br>ARISTA NETWORKS, INC. and TERRY JENKINS,<br><br>           Defendants. | Case No. 25-cv-04411-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS COMPLAINT, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>[Re: ECF 16] |

        Plaintiff Daniel Ashitey ("Ashitey") is an independent contractor who provides industry training regarding cloud computing and networking. *See* Compl. ¶ 1, ECF 1. He and non-party SDN Pros LLC ("SDN Pros"), a training services provider, entered an agreement under which Ashitey would provide training to other companies as assigned by SDN Pros on an order-by-order basis. *See id*. ¶ 1 & Ex. A (Service Agreement). Through SDN Pros, Ashitey was assigned to lead cloud engineering certification courses offered by Defendant Arista Networks, Inc. ("Arista"). *See id*. ¶¶ 1-2. Defendant Terry Jenkins, Arista's head of training and certification, expressed dissatisfaction with Ashitey's services and replaced him with another trainer in the middle of a course. *See id*. ¶ 20. That was the last assignment Ashitey received from SDN Pros. *See id*. ¶ 22. Ashitey sues Arista and Jenkins (collectively, "Defendants") for tortious interference with contractual relations and libel per se, seeking more than $5,000,000 in damages. *See id*. ¶¶ 5, 29-44.

        Before the Court is a motion to dismiss the complaint brought by Defendants under Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot., ECF 16. Oral argument was heard on November 17, 2025. See Minute Entry, ECF 30. The motion is GRANTED, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

## I. BACKGROUND[1]

Ashitey, a Canadian citizen, is a network engineer with more than twenty years of experience. *See* Compl. ¶ 6. He began doing course development and training for non-party SDN Pros in 2020. *See id.* ¶ 7. SDN Pros provides industry training for other companies, including Arista. *See id.* ¶ 3. Arista is based in California but it offers cloud engineering certification courses in several regions around the world. *See id.* ¶¶ 3-4. Jenkins is Arista's head of training and certification. *See id.*

Ashitey and SDN Pros entered into a Service Agreement dated March 15, 2022, stating that Ashitey would provide training services on an order-by-order basis, for which he would be compensated $1,250 per training day plus travel and living expenses. *See* Compl. Ex. A (Service Agreement). In preparation for assignments to provide training services for Arista, Ashitey expended time and money to acquire the necessary certifications. *See id.* ¶ 11. Ashitey received positive feedback when he began teaching Arista courses. *See id.* ¶¶ 12-13 & Ex. B.

The precise relationship between SDN Pros and Arista is unclear from the complaint. Ashitey refers to SDN Pros as Arista's "partner" throughout the complaint. Compl. ¶¶ 1-3. Arista's training officer, Jenkins, allegedly "runs the affairs of SDN Pros as his personal business," and "controls, directs, and has family members as employees in SDN Pros." *Id.* ¶ 8. SDN Pros uses the Slack messaging platform for internal communications, and Jenkins allegedly has unrestricted access to the SDN Pros Slack channels. *See id.* ¶¶ 8, 15. Jenkins uses an SDN Pros email address, Instructor@sdn-pros.com. *See id.* ¶ 8.

On June 18, 2024, Jenkins joined a Slack conversation between Ashitey and other SDN Pros personnel on a Slack channel labeled "911." *See* Compl. ¶ 16 & Ex. E (Slack Messages). Jenkins questioned Ashitey's inability to resolve a technical issue and cautioned Ashitey, "Just to be clear, if you are teaching for me I expect you to know the technology you are teaching beyond the students." *Id.* ¶ 19 & Ex. E (Slack Messages).

---

[1] The Background section is drawn from the facts alleged in the complaint, which are accepted as true for purposes of evaluating the Rule 12(b)(6) motion to dismiss. *See Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).

2

     Later the same day on June 18, 2024, another Slack conversation occurred between Jenkins, Ashitey, and two SDN Pros employees named Monica Berkley and Shawn Jones. Compl. ¶ 20 & Ex. F (Slack Messages). Defendants represent that Monica Berkley is an SDN Pros customer support manager, and Shawn Jones is SDN Pros' chief operating officer. *See* Defs.' Mot. at 7. Jenkins advised Ashitey, "Daniel, we do not need you to finish the course this week, we are putting another instructor in to finish the course." *Id*. ¶ 20 & Ex. F (Slack Messages). After referring to concerns expressed by customers, Jenkins stated that "this does not support the level of technical accuracy or quality that we represent." *Id*. ¶ 20 & Ex. F (Slack Messages). Ashitey responded, "Thanks for the opportunity," to which Jenkins replied, "You're welcome good luck in the future." *Id*. ¶ 20 & Ex. F (Slack Messages). Ashitey's access to SDN-Pros' worksite was terminated, and he was removed from courses he had been scheduled to teach for Arista. *See id*. ¶ 23. SDN Pros did not give Ashitey any further training assignments after that. *See id*. ¶ 22.

     Ashitey filed this suit against Arista and Jenkins on May 23, 2025, asserting two California state law claims: (1) tortious interference with contractual relations, and (2) libel per se. *See* Compl. ¶¶ 29-40. Ashitey's claims against Arista appear to be based solely on the alleged conduct of Jenkins. *See id.* Subject matter jurisdiction is based on diversity of citizenship. *See id.* ¶ 5.

     Arista and Jenkins seek dismissal of the complaint under Rule 12(b)(6) for failure to state a claim upon which relief may granted.

## II. LEGAL STANDARD

     Dismissal of a complaint is appropriate under Federal Rule of Civil Procedure 12(b)(6) "if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). When considering a Rule 12(b)(6) motion, a court must "take all allegations of fact as true and construe them in the light most favorable to the nonmoving party." *Id*. While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When evaluating a Rule 12(b)(6) motion, the district court is limited to consideration of the allegations of the complaint, documents incorporated into the complaint by reference, and matters that are subject to judicial notice. *See Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

### III.   DISCUSSION

Defendants assert that both claims of the complaint – Claim 1 for tortious interference with contractual relations and Claim 2 for libel per se – are subject to dismissal for failure to meet the Rule 12(b)(6) pleading standard. Ashitey argues that the claims are adequately pled. The Court addresses the claims in turn.

#### A.   Claim 1 – Tortious Interference with Contractual Relations

In Claim 1, Ashitey asserts that Arista and Jenkins tortiously interfered with his contractual relationship with SDN Pros. "It has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). The elements of a claim for intentional interference with contractual relations are: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (internal quotation marks and citation omitted). "It is generally not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." *Id*. That general rule is subject to certain exceptions, however. *See id.* "[T]o state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act." *Id*. at 1148.

Ashitey alleges that: there was a valid contract between himself and SDN Pros (first element); Jenkins knew of the contract (second element); Jenkins intentionally interfered with the contractual relationship between Ashitey and SDN Pros (third element); Jenkins' conduct caused SDN Pros to breach the contract (fourth element); and Ashitey suffered resulting damages (fifth element). *See* Compl. ¶¶ 29-33 & Ex. A (Service Agreement). Ashitey alleges that at all times,

Jenkins was acting as the agent of Arista. *See id*. ¶¶ 4-5.

Defendants do not challenge the sufficiency of those allegations. However, Defendants contend that the claim fails because Ashitey's allegations establish on their face that Jenkins was not a stranger to the contract, as required to impose liability for intentional interference with contractual relations. Defendants also contend that the claim fails because Ashitey has not alleged that Defendants engaged in an independently wrongful act, as required to impose liability for interference with an at-will contract such as the contract at issue here.

### 1.    Jenkins was not a Stranger to the Contract

Under California law, liability may be imposed against a third party who interferes with a contract "because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement." *Ixchel*, 9 Cal. 5th at 1142 (internal quotation marks and citation omitted). Unfortunately, "there is no definitive answer on the issue of who constitutes a 'stranger' in the context of a tortious interference claim under California law." *LBF Travel Mgmt. Corp. v. Derosa*, No. 20-CV-2404-MMA (AGS), 2022 WL 3588926, at *8 (S.D. Cal. Aug. 22, 2022). In 2001, the Ninth Circuit offered the following statement in *Marin Tug* when addressing the tort of intentional interference with economic advantage: "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party *stranger* to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001). Many district courts thereafter relied on *Marin Tug* to dismiss claims for intentional interference with contractual relations where the defendant had a direct interest or involvement in the contractual relationship, reasoning that such a defendant was not a stranger to the contract. *See, e.g. ViChip Corp. v. Lee*, 438 F.Supp.2d 1087, 1097 (N.D. Cal. 2006); *Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*, 319 F.Supp.2d 1059, 1070-72 (C.D. Cal. 2003).

In later decisions, however, the Ninth Circuit recognized that "*Marin Tug's* enunciation of California law is inconsistent with the later decisions of the California intermediate courts[.]"

5

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1127 (9th Cir. 2014); *see also United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1008 (9th Cir. 2014) (collecting cases). "California courts have repeatedly held that parties with an economic interest in a contractual relationship may be liable for intentional interference with that contract." *United Nat. Maint.*, 766 F.3d at 1008. Characterizing "[t]he 'not-a-stranger' principle" as "an elusive concept," the *Fresno Motors* court suggested that the only persons clearly insulated from liability for interference with contractual relations are the contracting parties themselves. *Fresno Motors*, 771 F.3d at 1126-27. In *United Nat. Maint.*, the Ninth Circuit clarified that neither contracting parties nor their agents may be held liable for interference with contractual relations. *See United Nat. Maint.*, 766 F.3d at 1008 (citing *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1604 n.3 (2009)).

Even as so limited, the not-a-stranger principle clearly applies to bar liability here. The claim for intentional interference with contractual relations is based entirely on Jenkins' conduct. *See* Compl. ¶¶ 30-33. However, the complaint alleges that Jenkins runs SDN Pros as his personal business, Jenkins controls SDN Pros, and Jenkins fired Ashitey from SDN Pros. *See id.* ¶ 8. Taking those allegations as true, Jenkins and SDN Pros are one and the same or Jenkins was acting as an agent of SDN Pros. Jenkins therefore cannot be considered a stranger to the contract between SDN Pros and Ashitey.

### 2. Ashitey has not Alleged and Independently Wrongful Act

Under California law, "to state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act." *Ixchel*, 9 Cal. 5th at 1142. "An act is not independently wrongful merely because defendant acted with an improper motive." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159.

Defendants assert that the agreement between Ashitey and SDN Pros was an at-will contract because it neither obligated SDN Pros to retain Ashitey as an instructor for any specific

length of time, nor required SDN Pros to provide Ashitey with any minimum number of training engagements. *See* Compl. Ex. A (Service Agreement). While Ashitey appears to dispute the at-will nature of the agreement in his opposition, his counsel conceded at the hearing that the agreement was at-will. Having reviewed the agreement, which is attached to the Complaint, the Court has no difficulty determining that it was an at-will contract on its face. *See id.*

Defendants argue that the complaint does not allege that they engaged in an independently wrongful act, as required to state a claim for intentional interference with an at-will contract. The Court agrees that the complaint does not allege an unlawful act by Defendants in support of the intentional interference claim. In his opposition, Ashitey contends that Defendants committed three independently wrongful acts sufficient to support a claim for intentional interference with contractual relations: "Unauthorized communications by Arista Networks personnel (Jenkins) to Plaintiff's client under NDA"; "Misuse of confidential material from Slack and email channels contemporaneous with active contract performance"; and "Inducement to terminate deliverables tied to Plaintiff's consulting contract." Pl.'s Opp. at 6, ECF 18. Those acts are not alleged in the complaint.

Based on the foregoing, the Court concludes that Claim 1 for intentional interference with contractual relations is subject to dismissal on the grounds that Jenkins was not a stranger to the contract between Ashitey and SDN Pros, and Claim 1 does not allege an independently wrongful act. While the latter defect might be curable by amendment, the former defect is not curable, as discussed below in Section III.C, Leave to Amend. Accordingly, the motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to Claim 1.

### B. Claim 2 – Libel Per Se

In Claim 2, Ashitey alleges that the messages Jenkins posted on Slack on June 18, 2024 constituted libel per se. Defendants argue that Jenkins' statements on Slack were non-actionable statements of opinion. Defendants also argue that even if Jenkins' statements were actionable, they would fall within the common interest privilege.

#### 1. Ashitey has not Alleged Defamatory Statements

"To prove defamation under California common law, the claimant must show that (1) the

7

accused party intentionally published (2) a statement of fact that is (3) false, (4) unprivileged, and (5) has a tendency to injure." *Lutfi v. Al Naimi*, No.: CV 17-08208 SJO (JPRx), 2018 WL 6265082, at *4 (C.D. Cal. Jan. 17, 2018) (internal quotation marks and citation omitted). "A defamatory statement that requires no explanation as to the defamatory or offensive nature of the statement is libel per se." *Id.* (internal quotation marks and citation omitted). "The elements of libel per se are otherwise identical to the claim of defamation." *Id.* (internal quotation marks and citation omitted).

The complaint alleges a mishmash of statements made by Jenkins in two different exchanges on two different Slack channels. *See* Compl. ¶¶ 35, 41 & Exs. E, F. On June 18, 2024, Jenkins joined a Slack conversation between Ashitey and other SDN Pros personnel on a Slack channel labeled "911." *See id.* ¶ 16 & Ex. E (Slack Messages). Jenkins questioned Ashitey's inability to resolve a technical issue and cautioned Ashitey, "Just to be clear, if you are teaching for me I expect you to know the technology you are teaching beyond the students." *Id.* ¶ 19 & Ex. E (Slack Messages). Later the same day on June 18, 2024, in another Slack conversation between Jenkins, Ashitey, and two SDN Pros employees, Jenkins advised Ashitey, "Daniel, we do not need you to finish the course this week, we are putting another instructor in to finish the course." *Id.* ¶ 20 & Ex. F (Slack Messages). After referring to concerns expressed by customers, Jenkins stated that "this does not support the level of technical accuracy or quality that we represent." *Id.* ¶ 20 & Ex. F (Slack Messages). Ashitey responded, "Thanks for the opportunity," to which Jenkins replied, "You're welcome good luck in the future." *Id.* ¶ 20 & Ex. F (Slack Messages).

The complaint compresses Jenkins' statements from the two Slack channels, making it appear as though they occurred in the same exchange. *See* Compl. ¶¶ 35, 41. Ashitey asserts that Jenkins' statements were defamatory. However, on their face the statements appear to express Jenkins' opinions regarding Ashitey's performance. An employer's performance evaluation cannot support a claim for libel unless it "accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics or behavior[.]" *Gould v. Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1153 (1995), as modified (Feb. 9, 1995) (internal quotation marks and citation omitted). "This is true even when the employer's

8

1  perceptions about an employee's efforts, attitude, performance, potential or worth to the enterprise
2  are objectively wrong and cannot be supported by reference to concrete, provable facts." *Id.*
3  (internal quotation marks and citation omitted).

4        Whether a statement is defamatory may be decided as a matter of law at the motion to
5  dismiss stage. *See Gould v. Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1153 (1995), as
6  modified (Feb. 9, 1995) ("The question whether a statement is defamatory can be reached on
7  demurrer as a matter of law."). The Court finds that, as alleged, Jenkins' statements are non-
8  actionable opinion about Ashitey's performance.

9        In his opposition, Ashitey asserts that Jenkins made defamatory statements falsely
10  claiming: "Plaintiff's incompetence and unfit in his profession"; "Terry Jenkins, published in
11  slack statements harmful to the Plaintiff's profession"; and "Plaintiff's consultancy was
12  'terminated due to ethical concerns.'" Pl.'s Opp. at 6-7. Those allegations do not appear in the
13  complaint. Ashitey also points to allegations in the complaint regarding positive statements made
14  about him years before Jenkins' allegedly defamatory statements. Those statements are not
15  sufficient to show that Jenkins' statements regarding Ashitey's performance years later were
16  objectively false.

17        **2.**      **Ashitey has not Alleged Malice to Defeat the Common Interest**
18             **Privilege**

19        The common interest privilege is codified in California Civil Code § 47(c), which provides
20  a conditional privilege for statements made "[i]n a communication, without malice, to a person
21  interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to
22  the person interested as to afford a reasonable ground for supposing the motive for the
23  communication to be innocent, or (3) who is requested by the person interested to give the
24  information." Cal. Civ. Code § 47(c). "The 'interest' must be something other than mere general
25  or idle curiosity, such as where the parties to the communication share a contractual, business, or
26  similar relationship or the defendant is protecting his own pecuniary interest." *Bikkina v.*
27  *Mahadevan*, 241 Cal. App. 4th 70, 90 (2015). The defendant bears the initial burden of showing
28  that statement falls within the privilege, then the burden shifts to the plaintiff to show that the

9

statement was made with malice. *See id.* The plaintiff must establish "actual malice" by showing either "that the publication was motivated by hatred or ill will towards the plaintiff" or "that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Id.* at 91 (internal quotation marks and citation omitted).

Here, it appears on the face of the complaint that Ashitey, Defendants, and SDN Pros were in a business relationship. Ashitey was an independent contractor assigned by SDN Pros to teach Arista's courses. Jenkins, in his role as head of training for Arista, would be expected to evaluate Ashitey's performance. Accordingly, as alleged in the complaint, it appears that Jenkins' statements fall within the common interest privilege. Ashitey therefore must allege facts showing malice in order to defeat the common interest privilege. *See Bowles v. Constellation Brands, Inc.*, 444 F. Supp. 3d 1161, 1178 (E.D. Cal. 2020) ("The burden in this case thus shifts to plaintiff, who argues that the common-interest privilege does not apply here because 'the defamatory statement was published with malice.'"). "A general allegation of malice will not suffice; plaintiff must allege detailed facts showing defendant's ill will towards him." *Id.* (internal quotation marks and citation omitted). Ashitey has not alleged any facts giving rise to a plausible inference that Jenkins bore him ill will or acted in reckless disregard for his rights.

Based on the foregoing, the Court concludes that Claim 2 for libel per se is subject to dismissal on the ground that the claim is based on Jenkins' non-actionable statements of opinion. In addition, it appears on the face of the complaint that the common interest privilege applies, and Ashitey has not pled facts showing that Jenkins acted with malice. Because those pleading defects may be curable through amendment, the motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 2.

### C. Leave to Amend

A district court ordinarily must grant leave to amend unless one or more of the following "*Foman* factors" is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)

(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id*.  However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id*.

The record does not suggest undue delay (first factor) or bad faith (second factor) on the part of Ashitey.  There have been no repeated failures to cure deficiencies (third factor), as the present motion addresses the original complaint.  It does not appear that allowing amendment would impose undue prejudice on Defendants (fourth factor).

Whether to allow leave to amend therefore turns on the fifth and final factor, futility.  The Court finds that amendment of Claim 1 for intentional interference with contractual relations would be futile because that claim is based on Jenkins' conduct and Ashitey could not plausibly allege that Jenkins was a stranger to the contract given the allegations in paragraph 8 of the complaint.  The Court has grave reservations whether Ashitey could cure the defects in Claim 2 for libel.  However, because it is not clear that amendment would be futile, the Court will grant leave to amend as to Claim 2.

## IV. ORDER

(1) Defendants' motion to dismiss the complaint is GRANTED as follows:

    (a) the motion is GRANTED WITHOUT LEAVE TO AMEND as to Claim 1 for intentional interference with contractual relations; and

    (b) the motion is GRANTED WITH LEAVE TO AMEND as to Claim 2 for libel per se.

(2) Any amended pleading SHALL be filed by January 15, 2026.  Leave to amend is limited to Claim 2 for libel per se against Defendants Arista and Jenkins.  Plaintiff may not add new claims or parties without express leave of the Court.

(3) This order terminates ECF 16.

Dated:  December 11, 2025

_____
BETH LABSON FREEMAN
United States District Judge